*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCURY INDEMNITY COMPANY OF AMERICA, individually and as assignee of Gabrielle Gallagher, Dennis Gallagher, and Loretta Gallagher,<br><br>Plaintiff,<br><br>v.<br><br>GREAT NORTHERN INSURANCE COMPANY and RICHARDS ASSOCIATES, INC.,<br><br>Defendants. | Civ. Action No. 19-14278 (GC)<br><br>**OPINION** |

**CASTNER, District Judge:**

This matter comes before the Court on Plaintiff Mercury Indemnity Company of America's ("Plaintiff" or "Mercury") Motion for Summary Judgment with respect to its claim for equitable subrogation and an assigned claim for breach of contract against Defendant Great Northern Insurance Company ("Great Northern"). (ECF No. 81.) Great Northern opposed the motion. (ECF No. 89.) Mercury replied. (ECF No. 92.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit arises out of a separate personal injury action filed by Alexis Mongiello against Gabrielle Gallagher for injuries Mongiello sustained in an automobile accident. At the time of the accident, Plaintiff was Gallagher's primary automobile insurer within limits of $250,000. Gallagher

1

also had excess liability coverage under an insurance policy issued by Great Northern, though apparently neither Gallagher nor Plaintiff was aware of such coverage. Following a jury trial, Mongiello's personal injury lawsuit resulted in a judgment against Gallagher in an amount far exceeding Gallagher's primary coverage. Plaintiff paid the entire judgment, obtained an assignment from the insureds, and then filed suit against Great Northern, seeking contribution for the judgment under the excess liability policy. Great Northern contests its liability to Plaintiff, claiming that it lacked notice of Mongiello's lawsuit until after the verdict was delivered and that Plaintiff acted in bad faith by failing to settle the suit within the primary policy limit prior to trial.

### A. The Insurance Policies

Gabrielle Gallagher, who was 17 years old in 2012, is the daughter of Dennis and Loretta Gallagher (collectively, the "Gallaghers"). (*See* Pl.'s Statement of Material Facts ("Pl.'s SOMF") ¶ 2, ECF No. 81-2.) Plaintiff issued Gabrielle Gallagher Personal Automobile Insurance Policy No. NJA8233659, effective June 2, 2012 to December 2, 2012, providing bodily injury coverage of up to $250,000 per person and $500,000 per accident (the "Mercury Policy"). (*Id.* ¶ 1; Declaration of Joseph J. Schiavone, Esq. ("Schiavone Decl."), ECF No. 81-3, Ex. 3.) Great Northern issued Dennis and Loretta Gallagher a Masterpiece Policy, Policy No. 12160261, effective August 1, 2012 to August 1, 2013, providing excess liability coverage of up to $2,000,000 excess $500,000 (the "Masterpiece Policy"). (Pl's SOMF ¶ 3; Schiavone Decl., Ex. 4.) Under the Masterpiece Policy, the definition of a "covered person" includes "a family member." (Pl.'s SOMF ¶ 11; Schiavone Decl., Ex. 4.) A 2005 Honda Accord, owned by the Gallaghers, was listed as an insured vehicle under both the Mercury Policy and the Masterpiece Policy. (Pl.'s SOMF ¶ 10; Schiavone Decl., Exs. 3–4.)

Richards Associates, Inc. ("Richards") is an insurance producer in the State of New Jersey. (Pl.'s SOMF ¶ 4.) Richards was the producer of the Mercury Policy. (*Id.* ¶ 5.) In 2010, Richards entered the Chubb Access Program Agreement (the "Chubb Program Agreement") with Chubb

Insurance Solutions Agency, Inc. ("CISA"). (*Id.* ¶ 6; Schiavone Decl., Ex. 5.) Great Northern is a "Chubb" company. (Pl's SOMF ¶ 2 n.1; Schiavone Decl., Ex. 4.). Under the Chubb Program Agreement, Richards is a producer of Chubb products and is required to "report all losses and claims to CISA and the applicable Chubb insurer(s) immediately upon receipt of knowledge of their occurrence and provide relevant loss and claim information." (Pl.'s SOMF ¶¶ 7–8; Schiavone Decl., Ex. 5.) The Masterpiece Policy lists Richards as the point of contact for the insured. (*See* Schiavone Decl., Ex. 4.)

### B. The *Mongiello* Action

On November 9, 2012, Gabrielle Gallagher was driving the Gallaghers' 2005 Honda Accord when she was involved in an automobile collision with another vehicle in which Alexis Mongiello was traveling as a passenger (the "Accident"). (Pl.'s SOMF ¶ 12.) Richards received initial notice of the insurance claim related to the Accident on November 12, 2012, at which point Richards reported the claim to Plaintiff. (*Id.* ¶¶ 13, 15.)

On October 16, 2014, Mongiello filed a civil action in the Superior Court of New Jersey, Law Division, Sussex County, alleging personal injury and seeking damages caused by the Accident (the "*Mongiello* Action"). (*Id.* ¶ 16; Schiavone Decl. Ex. 7.) Richards was notified of the *Mongiello* Action on November 10, 2014 and provided notice to Plaintiff the same day. (Pl.'s SOMF ¶¶ 17, 19.) On December 3, 2014, Plaintiff retained counsel, the Law Offices of David C. Harper, to defend Gallagher in the *Mongiello* Action. (Def.'s Counterstatement of Material Facts ("Def.'s COMF") ¶ 3, ECF No. 89-1.) During the pendency of the *Mongiello* Action, Gallagher executed an Affidavit of No Other Insurance, attesting that the Mercury Policy was her only relevant insurance policy. (*See* Schiavone Decl., Ex. 9.) Prior to trial, in March 2017, Mongiello filed an Offer of Judgment, offering to take judgment in the matter in the amount of $150,000. (Def.'s COMF ¶ 5; ECF No. 43-9.) However, the matter proceeded to trial, and, on June 21, 2017, the jury returned a verdict against

Gabrielle Gallagher in the amount of $1,800,000. (Pl.'s SOMF ¶ 22.) The next day, Richards reported the *Mongiello* Action to Great Northern. (*Id.* ¶ 23; Def.'s COMF ¶ 8.)

On June 26, 2017, Great Northern's Claim Director, Joseph McGrath memorialized a telephone conversation between Plaintiff and himself, requesting that Plaintiff provide Great Northern various documents related to the *Mongiello* Action, including those of its defense counsel. (Def.'s COMF ¶ 9; ECF No. 43-3.) McGrath also authored a June 27, 2017 claim note memorializing a conversation with Loretta Gallagher, the named insured on the Masterpiece Policy, which noted that Gabrielle Gallagher had "repeatedly asked" Plaintiff to settle the *Mongiello* Action, but Plaintiff refused. (Def.'s COMF ¶ 10.) With Great Northern actively investigating the claim and judgment, the Gallaghers instructed Plaintiff and its defense counsel in the *Mongiello* Action to provide Great Northern with all requested information about the case. (*Id.* ¶¶ 13–14.) However, Great Northern's request for documents went, at least partially, unfulfilled, and later became the subject of a discovery dispute in this matter. (*Id.* ¶ 16, 24–28.)

Amid the document-related negotiations following the jury verdict, in separate letters, dated July 11, 2017 and August 14, 2017, Great Northern informed Gabrielle Gallagher that, despite the "potential for coverage" under the Masterpiece Policy, Great Northern reserved all of its rights to disclaim coverage based on untimely and prejudicial notice of the *Mongiello* Action. (Pl.'s SOMF ¶¶ 26–27, 30.) Although, in an internal email, Great Northern acknowledges that the Summons and Complaint in the *Mongiello* Action was sent to Richards on November 10, 2014, Great Northern itself received actual notice on June 22, 2017, the day after the jury verdict. (Pl.'s SOMF ¶ 31; Def.'s COMF ¶ 8.)

Gabrielle Gallagher filed an appeal of the *Mongiello* Action on August 18, 2017, following the entry of an amended judgment in the amount of $2,041,326.50 inclusive of prejudgment, interest, attorneys' fees and costs. (Pl.'s SOMF ¶¶ 33–34.) In response to Plaintiff's request that it pay one-

4

third of the appeal bond, Great Northern refused, stating that Plaintiff had disregarded the interests of the insured and that of Great Northern by failing to settle the *Mongiello* Action, contrary to good faith claim handling practices. (*Id.* ¶¶ 36–38.) Plaintiff posted the bond, the judgement against Gabrielle Gallagher was affirmed on appeal, and the New Jersey Supreme Court denied the subsequent petition for certification. (*Id.* ¶¶ 41–43.)

On June 4, 2019, Plaintiff entered into an agreement with the Gallaghers, whereby Plaintiff agreed to satisfy the judgment amount in the *Mongiello* Action in exchange for a release of any claims against it and an assignment from the Gallaghers, including an assignment of all rights, claims, and causes of action that the Gallaghers may have against Great Northern and Richards (the "Assignment and Release Agreement"). (*Id.* ¶¶ 48–47; Schiavone Decl., Ex. 35.) On June 11, 2019, Plaintiff satisfied the full amount of the judgment with payment to Mongiello in the amount of $2,242,577.85, inclusive of accrued per diem interest. (Pl.'s SOMF ¶ 50.)

C.   **Procedural History**

On June 26, 2019, Plaintiff, individually and as assignee of the Gallaghers, filed its Complaint against Great Northern and Richards, asserting claims for, among other things, breach of contract and equitable subrogation. (*See generally* Compl., ECF No. 1.) During discovery, Great Northern subpoenaed files related to Plaintiff's legal defense in the *Mongiello* Action. On February 17, 2021, Plaintiff, on behalf of Gallagher, moved to quash the subpoena, asserting attorney-client and work product privilege. (ECF No. 42.) After extensive briefing and oral argument, the Magistrate Judge denied Plaintiff's Motion to Quash on March 22, 2022. (ECF No. 67.) The Court denied Plaintiff's appeal of the Magistrate's Judge's Opinion and Order on February 21, 2023. (ECF No. 93.)

While the appeal of the Magistrate Judge's Opinion and Order denying Plaintiff's Motion to Quash was pending, Plaintiff moved for summary judgment as to its claim against Great Northern for equitable subrogation and as to the breach of contract claim against Great Northern, assigned to

5

Plaintiff by the Gallaghers. (*See* Pl.'s Moving Br., ECF No. 81-1.) Great Northern opposed the motion. (*See* Def.'s Opp'n Br., ECF No. 89.) Plaintiff replied. (*See* Pl.'s Reply Br., ECF No. 92.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no "genuine issue" exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.

### III. <u>DISCUSSION</u>

Plaintiff moves for summary judgment as to its equitable subrogation claim and, as assignee of the Gallaghers, for breach of the Masterpiece Policy, asserting that because it satisfied the entire judgment in the *Mongiello* Action, Great Northern is precluded from raising any defense based on allegations of bad faith related to its failure to settle that lawsuit. (*See* Pl.'s Moving Br. at 7–12.) According to Plaintiff, under New Jersey law, there is no direct duty of good faith and fair dealing flowing from the primary insurance carrier to the excess carrier, and, therefore, any defense rooted in a purported breach of such a duty fails as a matter of law. (*See* Pl.'s Reply at 2–6.) Plaintiff further contends that Great Northern's defenses based on untimely notice of the *Mongiello* Action fail because Richards was timely notified of that suit, which effectively served as notice to Great Northern under the terms of the Chubb Program Agreement and the Masterpiece Policy. (*See* Pl.'s Moving Br. 12–15.)

In opposition, Great Northern contends that it is well-established that the primary insurance carrier owes the excess carrier the same positive duty it owes to the insured—to attempt, in good faith, to negotiate a settlement within its policy limit. (*See* Def.'s Opp'n Br. at 19–23.) Great Northern highlights that critical discovery related to Plaintiff's handling of the *Mongiello* Action remains outstanding and that, absent such discovery, any decision with respect to its defenses is premature. (*See id.* at 11–13.) Great Northern further argues that genuine issues of material fact exist regarding Great Northern's notice of the *Mongiello* Action and the Gallagher's compliance with conditions precedent to coverage under the Masterpiece Policy. (*See id.* at 24–26.)

Because Plaintiff owed Great Northern a duty of good faith in connection with its handling of the *Mongiello* Action, and because discovery directly bearing on Great Northern's related defenses

7

remains outstanding, summary judgment is unwarranted.

      A.      **Great Northern's *Rova Farms* Defense**

"Under the seminal case of *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474 (1974), a primary insurer is liable to an excess insurer for an excess verdict where the primary insurer failed to settle with a third-party claimant within the primary policy limit prior to trial, and where, prior to trial, (1) a jury could have potentially found liability for the third-party claimant and the potential verdict could have exceeded the primary policy limit, (2) the third-party claimant was willing to settle within the primary policy limit, and (3) the primary insurer did not negotiate in 'good faith.'" *Hartford Casualty Ins. v. Liberty Mut. Fire Ins. Co.*, No. 18-0044, 2021 WL 1186759, at *3 (D.N.J. Mar. 30, 2021) (citing *Am. Hardware Mut. Ins. Co. v. Harley Davidson of Trenton, Inc.*, 124 F. App'x 107, 112 (3d Cir. 2005)). Pursuant to this doctrine, "[t]he primary carrier owes the excess carrier the same positive duty it owes its insured, to take the initiative and attempt to negotiate a settlement within its policy limit." *Baen v. Farmers Mut. Fire Ins. Co. of Salem Cty.*, 318 N.J. Super. 260, 267 (App. Div. 1999). "While the interests of the primary insurer are, for the most part, unaffected by the existence of excess coverage, the interests of the excess carrier are very much affected by the actions of the primary." *Estate of Louis Penn v. Amalgamated Gen. Agencies*, 148 N.J. Super. 419, 424 (App. Div. 1977). For instance, "[i]f the primary carrier undertakes the representation of the insured, then it has the sole right to negotiate settlements." *Id.* "If the primary carrier is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums" and "[i]t would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits." *Id.*

New Jersey courts have therefore long recognized that "[f]airness and policy require the imposition of a duty of good faith on the primary carrier." *Baen*, 318 N.J. Super. at 267 (citation

omitted). "The primary carrier is in a knowledgeable position, as it has current information of the status of an underlying claim, while the excess carrier relies on the primary carrier to act in good faith." *Id.* As such, an "excess carrier may rely on the primary carrier to act reasonably in (1) discharging its claims-handling obligations; (2) discharging its defense obligations; (3) properly disclosing and apprising the excess carrier of events which are likely to effect that carrier's coverage; and (4) safeguarding the rights and interests of the excess carrier by not placing the primary carrier's own interests above that of the excess insurer." *CNA Ins. Co. v. Selective Ins. Co.*, 354 N.J. Super. 369, 383 (App. Div. 2002). "However, where an excess carrier has denied coverage, this duty evaporates." *Baen*, 318 N.J. Super. at 267. More precisely, "[w]hen an insurer violates its contractual obligations to the insured, it forfeits its right to control settlements." *Id.* (citing *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 N.J. 63, 72 (1976)).

Here, Plaintiff asserts that Great Northern is precluded from raising a defense based on its alleged bad faith claim handling of the *Mongiello* Action because (i) Great Northern has not contributed to the *Mongiello* Action judgment and thus has no equitable subrogation right and (ii) the Gallaghers released any such claims against Plaintiff under the Assignment and Release Agreement. (*See* Pl.'s Moving Br. at 10–12.) Simply put, Plaintiff argues that it did not and does not owe Great Northern a duty of good faith under *Rova Farms* and its progeny. (*See* Pl.'s Reply Br. at 2–6.) However, Plaintiff's view amounts to an overly restrictive understanding of the relationship between primary and excess insurance carriers under New Jersey law.

As explained above, the primary carrier owes the excess carrier a "positive duty" to "attempt to negotiate a settlement within its policy limit," and "[f]airness and policy require the imposition of a duty of good faith on the primary carrier." *Baen*, 318 N.J. Super at 267. The duty of good faith Plaintiff owed to Great Northern attached at the outset of the *Mongiello* Action as Plaintiff undertook representation of the insured. By doing so, Plaintiff was in a "knowledgeable position" as to the

9

potential for settlement, had "current information of the status of [the] underlying claim," and therefore "it [was] reasonable for the excess carrier [Great Northern] to rely on the primary carrier [Plaintiff] to act in good faith." *Id.* To be sure, there would have been no such duty flowing to Great Northern had it denied coverage at the time, which would have acted to forfeit its rights with respect to a settlement. *See id.* at 267–68. But, as the record demonstrates, Great Northern did not even receive actual notice of the *Mongiello* Action until after the verdict was handed down by the jury, let alone deny coverage. (*See* Pl.'s SOMF ¶ 23; Def.'s COMF ¶ 8.) Plaintiff ultimately provides no legal support for its position that the duty of good faith it owed to Great Northern during the *Mongiello* Action either did not exist or retroactively ceased to exist based on events that occurred after the jury verdict.[1] While Plaintiff is correct to point out that Great Northern now lacks an affirmative cause of action for equitable subrogation given its refusal to contribute to the *Mongiello* Action judgment, Plaintiff fails to explain how that fact also precludes Great Northern from asserting a defense based on the alleged breach of a duty it was owed throughout the settlement negotiations. Thus, Great Northern's defense that Plaintiff acted in bad faith by refusing to settle the *Mongiello* Action is not barred as a matter of law.

Further, as set forth below, **Plaintiff's** Motion seeking to disqualify Great Northern's *Rova Farms* defense comes amid a protracted discovery dispute regarding Great Northern's right to litigation files from the *Mongiello* Action—documents upon which Great Northern's defense hinges. Plaintiff's Motion for Summary Judgment effectively looks to circumvent the production of those

---

[1] Plaintiff points to *Employers Mutual Casualty Co. v. Key Pharmaceuticals*, 871 F. Supp. 657 (S.D.N.Y. 1994) for the proposition that "New Jersey has not yet even addressed whether a primary carrier owes a duty of care directly to the excess carrier (as opposed to owing a duty by virtue of 'equitable subrogation')." *Id.* at 665. However, the Court notes that not only is the statement, relied upon by Plaintiff, mere dicta in a non-binding opinion, but also that the opinion pre-dates several New Jersey cases, cited above, which clarify the contours of the relationship between primary and excess carriers and hold that the primary carrier's duty of good faith toward the excess carrier arises out of fairness and public policy. *See, e.g., Baen*, 318 N.J. Super at 267.

files, even despite the Magistrate Judge's well-reasoned ruling, which the Court has affirmed, that Great Northern is entitled to the discovery. (ECF Nos. 67, 93.) As the Magistrate Judge aptly stated, "Mercury is suing Great Northern to recover monies it paid on behalf of their common insured in a case in which Mercury controlled the defense and passed up on an opportunity to settle within its policy limits. To expect reimbursement for the substantial judgment at issue, without disclosing all of the documents that reflect Mercury's reasoning in not settling before trial, would run counter to the public policy behind the relationship between excess and primary carriers." (ECF No. 67 at 25.)

### B. Outstanding Discovery and Fact Disputes Preclude Summary Judgment

On February 21, 2023, the Court affirmed the Magistrate Judge's Opinion and Order denying Plaintiff's Motion to Quash Great Northern's subpoena of litigation files related to the *Mongiello* Action. (ECF No. 93.) Plaintiff's Motion for Summary Judgment is thus before the Court without Great Northern having had the benefit of such discovery. In opposition to summary judgment, Great Northern highlights that discovery in this matter is incomplete and that it must be given the opportunity to develop a complete factual record with respect to its defenses. (*See* Def.'s Opp'n Br. at 20–26.) The Court agrees.

"[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Shelton v. Bledsoe*, 775 F.3d 554, 565 (3d Cir. 2015) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007)). Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, Great Northern submits a declaration detailing the outstanding discovery in this matter, including remaining depositions and document productions directly related to its defenses. (*See* Decl.

11

of Timothy M. Jabbour, Esq. ("Jabbour Decl.") ¶¶ 16–17, ECF No. 89-2.) This submission satisfies Great Northern's burden under Rule 56(d) and warrants the denial of Plaintiff's Motion. First, the litigation files related to the *Mongiello* Action from Plaintiff and its defense counsel in that matter, the Law Offices of David C. Harper, bear directly on Great Northern's defense that Plaintiff acted in bad faith by failing to settle. Great Northern's right to that discovery is now definitively established. (*See* ECF No. 93.) Great Northern must be afforded the opportunity to review those files and further develop the factual record in that respect. Indeed, although the present record does not include any conclusive evidence of Plaintiff's purported bad faith, evidence such as the $150,000 Offer of Judgment in the *Mongiello* Action, raises the inference that a settlement within the Mercury Policy limit was possible and warrants additional inquiry into Plaintiff's actions. (*See* Def.'s COMF ¶ 5; ECF No. 43-9.) Second, as to Great Northern's defenses regarding its alleged breach of the Masterpiece Policy, discovery is similarly incomplete. (*See* Jabbour Decl. ¶ 17.) Unresolved factual issues regarding whether the Gallaghers complied with conditions precedent to coverage under the Masterpiece Policy, particularly considering Gabrielle Gallagher's execution of an Affidavit of No Excess Insurance and Great Northern's lack of actual notice of the *Mongiello* Action until June 22, 2017, counsel against any judgment on the merits at this time. (*See* Def's COMF ¶¶ 4, 8; Schiavone Decl., Ex. 9.)

      As such, Plaintiff's Motion for Summary Judgment is denied as premature. The Court is obligated to give Great Northern the opportunity to obtain discovery relevant to its defenses, especially in light of its right to the litigation files from the *Mongiello* Action, which have, thus far, been withheld. Should the outstanding discovery fail to show bad faith on Plaintiff's part or resolve the factual issues surrounding the Gallaghers' compliance with the conditions of the Masterpiece Policy, Plaintiff may renew its Motion.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate Order will follow.

Date: June 30, 2023

_____
Hon. Georgette Castner
U.S. District Judge